STATE OF MINNESOTA *vs.* R. B. GALUSHA.

October 21, 1879.

State Auditor—Power to Settle with Trespassers for Stumpage.—H. wrong-
fully and without authority of law cut and carried away timber standing
on land belonging to the state. In February, 1876, H. and the state
auditor stated an account for the stumpage of the timber, for the scaling
of it, and for interest upon the amount of such stumpage and scaling,
in which account H. acknowledged that he owed the state, for such
stumpage, scaling and interest, $2,124.10, and agreed to pay that sum
on November 1, 1876; and the auditor, in consideration of defendant's
guaranty of payment of the same, extended the time for payment to that
date. In consideration of this extension, defendant guaranteed the pay-
ment of the account on said November 1st, with ten per cent. interest.
*Held,* that under Laws 1874, c. 35, (Gen. St. 1878, c. 38, § 53,) the auditor
had authority to settle with H. for the stumpage, and to state an account
therefor, as also to defer or extend the time of payment of the amount of
such account, and that therefore H.'s promise to pay and the defendant's
guaranty were each founded upon a legal consideration.

Appeal by the state from a judgment of the district court
for Ramsey county, where the action was tried before *Brill,*
J., without a jury.

*Geo. P. Wilson,* Attorney General, for the State.

*Davis, O'Brien & Wilson,* for respondent.

BERRY, J. Hale wrongfully and without authority of law
cut and carried away timber standing on land belonging to the
state. In February, 1876, Hale and the state auditor stated
an account for the stumpage of the timber, for the scaling of
it, and for interest upon the amount of such stumpage and
scaling, in which account Hale acknowledged that he owed
the state, for such stumpage, scaling and interest, $2,124.10,
and agreed to pay that sum on November 1, 1876; and the
auditor, in consideration of defendant's guaranty of payment
of said sum, extended the time for payment of the same by
Hale to that date. In consideration of this extension, defend-
ant guaranteed the payment of the account on said November
1st, with ten per cent. interest. Upon this guaranty the present

action is brought. The defence is—*First*, that the auditor had no authority to settle with Hale for the stumpage, by stating an account for the same; and, *second*, that even if he had authority to do this, he had none to extend the time of payment of such account. Upon these grounds it is argued that the guaranty is without any legal consideration.

The authority of the auditor is derived wholly from the statute. Gen. St. *c.* 38, § 2, reads thus: "The state auditor shall be *ex officio* commissioner of the land-office. He shall have the general charge and supervision of all lands belonging to the state, of all lands in which the state has an interest, or which are held in trust by the state, and may superintend, lease, sell and dispose of the same, in such manner as shall be directed by law."

Laws 1874, *c.* 35, (Gen. St. 1878, *c.* 38, § 53,) enacts "that in addition to the penalties provided for in this title, (*i. e.,* Gen. St. *c.* 38, relating to public lands,) against those committing trespass upon any of the lands owned or held in trust, or otherwise, by this state, the state auditor, by virtue of his office as commissioner of the land-office, is hereby authorized and empowered, without legal process, to seize and take, or cause to be seized and taken, any and all lumber, (timber,) wood, grass, or other property, unlawfully severed from the said lands, whether the same has been removed from said lands or not, and may dispose of the property so seized and taken, either at public or private sale, in such manner as will be most conducive to the interests of the state; and all moneys arising therefrom, after deducting the reasonable and necessary expenses of such seizure and sale, shall be a part of the permanent school-fund, and shall be invested in accordance with the provisions of this title." We are of opinion that this law of 1874 gives the auditor authority to do what was done in this instance, both as respects the settlement for the stumpage, and the deferring of the time of payment by giving the so-called extension.

If strictly adhered to, the letter of the act of 1874 would

require the auditor to seize and take, or cause to be seized and taken, timber unlawfully severed from the public lands. of the state, before he could sell the same. But the purpose of this requirement evidently is that the auditor shall obtain control of the timber, so as to enable him to sell, not a cause of action, but something of which he can put the purchaser in possession, so that it will be worth buying at a fair price. Where there is no dispute about the state's title to the timber, and the purchaser has got possession of it without any actual seizure by the auditor, and without any adverse claim, there can be no practical reason for requiring the auditor to make a seizure as a mere matter of form, and no reason why a sale by the auditor, without such seizure, should not be valid and effectual for every purpose. The object of the law is accomplished without the seizure, and the maxim, *Lex neminem cogit ad vana seu inutilia*, applies.

The case at bar falls within this exposition of the statute. Hale wrongfully, and without lawful authority, cut and carried away timber from land of the state. An accounting is had between him and the auditor for the stumpage, and the value of the same is agreed upon. It is further agreed between the parties that Hale shall pay the agreed value of the stumpage. This is, in effect, a sale, by the auditor, of the timber to Hale, for the price thus fixed. Now, Hale had cut and carried away the timber in question, and in this way had acquired actual possession of it. He comes forward, acknowledging his trespass, and is willing to settle for the stumpage—that is, to buy the timber wrongfully cut. The auditor settles with him for what is presumably a fair price for the stumpage; that is to say, the auditor sells him the timber. The state does not suffer, for it gets the value of that which was wrongfully taken from its land. In these circumstances, why should the auditor, before making the settlement and sale, be required to make a seizure? It seems to us that this would be to require an idle form, of no consequence to anybody. The purpose of the statute is fully carried out without the seizure,

and this is, in our opinion, sufficient. It follows that, upon the facts of this case, the auditor was authorized to state the account, and make the settlement and sale in question, and that the same furnished a legal and valid consideration for Hale's promise to pay the price agreed upon. The sale was, therefore, also a sale and disposal of timber in a manner provided by law, within the meaning of Gen. St. *c.* 38, § 2, *supra,* if the section applies to the sale and disposal of timber severed and removed from state lands. This disposes of the first branch of the defence.

The second, viz., that the auditor had no authority to extend the time of payment, *i. e.*, to defer the time of payment, is answered by the statute of 1874, which, as before seen, provides that the auditor "may dispose of the property so seized and taken, either at public or private sale, in such manner as will be most conducive to the interests of the state." As applied to a case like this at bar, in which the taking and seizure may be dispensed with, this statutory provision confers upon the auditor a discretion as to the terms of sale, limited only by the general direction to exercise it in such way as will most conduce to the state's interests. This authorizes him to give time, as was done in this instance. We are, therefore, of opinion that neither of the defences set up is good, and that there was a legal and sufficient consideration for the guaranty sued upon. The case of *State of Wisconsin* v. *Torinus,* 24 Minn. 332, cited by the defendant, is not parallel to this.

The judgment is reversed, and judgment directed to be entered for the plaintiff.

---

Upon a motion by defendant for a modification of the order for judgment, the following opinion was filed, on November 21, 1879:

*By the Court.* In this case, the cause having been tried by the court below without a jury, and a judgment rendered in

favor of the defendant, the plaintiff appealed to this court. The only question on the appeal was, who was entitled to judgment, on the facts found by the court below? This court held that, on such facts, the plaintiff should have judgment, and ordered accordingly, reversing the judgment of the court below. The defendant now asks that the order be modified, so as to direct a new trial, instead of ordering judgment on the facts found; suggesting that the court below erred in its finding upon a material fact, without the existence of which fact the plaintiff could not be entitled to judgment.

This court has the power to order a new trial in such a case, instead of directing judgment on the facts found; and that is the proper course where it is made to appear that, in the trial of any issue of fact, the court below or the referee erred to the prejudice of the respondent, provided the fact be such that a different finding upon it from that made by the court below or referee would necessarily affect the judgment to be entered. If such error do not appear upon the record, the respondent may show it here by affidavit, or the minutes of the court, or of the short-hand reporter, where there was one.

In this case, the issue as to which it is suggested the court below erred was as to the ownership of the lands upon which the timber was cut. Upon an examination of the minutes of the trial, we are satisfied that in the settlement with the auditor, and on the trial, it was taken for granted and not disputed that the lands belonged to the state. The auditor, as a witness, testified to it without any objection. No point was made of it till the evidence had closed.

Application denied.